522 So.2d 341 (1988)
Robert Brian WATERHOUSE, Appellant,
v.
STATE of Florida, Appellee.
Robert Brian WATERHOUSE, Petitioner,
v.
Richard DUGGER, Respondent.
Nos. 69557, 70459.
Supreme Court of Florida.
February 11, 1988.
Rehearings Denied April 25, 1988.
*342 Stephen B. Bright, Clive A. Stafford Smith and Julie Edelson, Atlanta, for appellant/petitioner.
Robert A. Butterworth, Atty. Gen., and Peggy A. Quince and Candance M. Sunderland, Asst. Attys. Gen., Tampa, for appellee/respondent.
PER CURIAM.
We have before this Court two consolidated cases. One is an appeal from the denial of a motion for post-conviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. The other is a petition for a writ of habeas corpus. Because this case involves the imposition of the sentence of death, following a conviction for first degree murder, this Court has jurisdiction to review both the trial court order denying relief and the petition for a writ of habeas corpus. Art. V, § 3(b)(1),(9), Fla. Const.
Robert Brian Waterhouse, the appellant and petitioner herein, was found guilty by a jury of the murder of Deborah Kammerer, which occurred on the night of January 2, 1980. Following a jury recommendation of death, the trial court entered an order sentencing him accordingly. On direct appeal, this Court affirmed both the conviction and the sentence of death, Waterhouse v. State, 429 So.2d 301 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983). In February 1985, Governor Bob Graham signed a death warrant on Waterhouse, which execution was stayed by the trial court pending resolution of this rule 3.850 motion. The trial court eventually denied the motion and this appeal, as well as the petition for writ of habeas corpus, followed. For the reasons which follow we affirm the trial court's denial of post-conviction relief, but grant Waterhouse's writ of habeas corpus.
Dealing with the rule 3.850 motion first, Waterhouse raises on this appeal issues concerning the prosecution's withholding of exculpatory evidence at trial, ineffective assistance of counsel, and the use of a certain past conviction as an aggravating circumstance. Because of our determination in the habeas corpus proceedings, we need not address the issues of the aggravating circumstances, or the allegations of ineffective assistance of counsel at the sentencing proceeding.
Waterhouse alleges that the prosecution violated the requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose the availability of two possibly exculpatory witnesses until the eve of trial, as well as failing to disclose information which would impeach the credibility of one of the state's chief witnesses against Waterhouse. In the first set of circumstances, the prosecution had in its possession the names of two witnesses who placed the victim, leaving a bar on the night of the attack, with another man who had previously been accused of rape. The prosecutor was aware of the availability of these two witnesses, but claims not to have known the information they possessed was exculpatory to Waterhouse. He states that when he did become aware of the nature of this evidence, he immediately disclosed it to Waterhouse.
Waterhouse's second allegation of Brady violations states that the prosecutor was aware of, and did not disclose, information and reports which would have seriously damaged the credibility of one of the state's leading witnesses, Kenneth Young. Young testified that, while a cellmate of Waterhouse, he had witnessed Waterhouse attempt to sexually assault another prisoner. He also testified that, after the assault, Waterhouse confessed to Young the details of the Kammerer murder. What the prosecutor allegedly failed to disclose were police reports that Young operated an extortion business while in prison and that Young asked for, and received, favorable treatment in return for testifying against Waterhouse. The state claims that, although the prosecutor did not disclose the police reports to Waterhouse, Waterhouse had already gained possession of the impeaching evidence through other means, and therefore was not prejudiced by the nondisclosure of the report.
In Brady, the United States Supreme Court held that the prosecution is *343 required to disclose all evidence that is favorable to the accused. There is no question that this includes evidence which affects a witness's credibility as well as evidence tending to negate the defendant's guilt. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The Court stated that the proper standard for determining a Brady violation is whether there is a reasonable probability that the result would have been different. The term reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. See Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.
There is no such undermining of confidence in the outcome in this case. As stated, Waterhouse knew of the evidence tending to impeach Young. He simply chose not to use it. Moreover, despite knowing throughout the trial of the two exculpatory witnesses, Waterhouse declined to call one of them, believing that his testimony would do more harm than good. Thus, although it seems clear that the prosecution should have timely disclosed the information to Waterhouse, it has not been shown that Waterhouse was in any way prejudiced by the nondisclosure, or late disclosure, of the information.
Were it true that the information improperly withheld possessed some value, Waterhouse might have been prejudiced sufficiently to require a reversal based on Brady. However, as any information which may have been improperly withheld was either already in Waterhouse's possession, or it was of little or no use to Waterhouse, we cannot state to any degree of certainty that there is a reasonable probability that the outcome of the trial would have been different. There simply is none of the undermining of confidence in the proceedings necessary to cause a reversal of Waterhouse's conviction.
The second issue concerns allegations that trial counsel was ineffective. As stated, because of our disposition of the habeas corpus writ, we need not discuss the allegations regarding ineffectiveness during the sentencing proceeding. However, certain arguments regarding ineffectiveness of counsel during the guilt phase of the trial do warrant comment. Waterhouse alleges that his trial counsel was ineffective for failing to investigate to any significant extent the large quantity of expert testimony and technical evidence presented against him. He claims that had counsel effectively done his job, he would have discovered that much of this evidence would have been subject to extensive impeachment. Stated differently, Waterhouse claims that reasonable counsel would have discovered the obvious, and less than obvious defects in the expert testimony and scientific evidence.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court stated that the test for ineffective assistance is whether counsel's deficiencies (if any) result in "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068. That is to say, counsel has been constitutionally ineffective if his or her "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2063. Waterhouse must show, in order to succeed in his claim of ineffective assistance of counsel, that counsel's performance was deficient and that Waterhouse was prejudiced by that deficiency.
We believe that counsel's inability to successfully rebut the state's scientific evidence was due more to the quality of that evidence rather that any failure to adequately prepare. We are not convinced, as Waterhouse would have this Court believe, that this technical evidence is so defective that any amount of trial preparation would easily discredit that testimony. Waterhouse is not entitled to perfect or error-free counsel, only to resonably effective counsel. It is clear from the record that trial counsel made a significant effort to impeach the expert testimony. His inability to do so successfully does not render him ineffective. We find no merit in any of *344 Waterhouse's allegations of guilt-phase ineffective assistance of counsel.
Turning to the petition for a writ of habeas corpus, Waterhouse raises two additional issues. The first, concerning effective assistance of appellate counsel, is rendered moot by our granting the writ based on the second issue. The second issue involves the failure of the trial court to instruct upon, and allow the jury to consider, evidence of nonstatutory mitigating circumstances. This Court has, since the issuance of Hitchcock v. Dugger, ___ U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), consistently declined to uphold death sentences where the proceedings violate the teachings of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). See Thompson v. Dugger, 515 So.2d 173 (Fla. 1987) (consolidated cases); Downs v. Dugger, 514 So.2d 1069 (Fla. 1987); Morgan v. State, 515 So.2d 975 (Fla. 1987); Riley v. Wainwright, 517 So.2d 656, 12 F.L.W. 457 (Fla. 1987). This case represents another situation where the trial judge did not instruct on, and the jury clearly did not consider, evidence of nonstatutory mitigating circumstances. Here, the jury had the added restriction of the prosecuting attorney telling the jury during closing argument that (consistent with the judge's instructions) the jury should not consider the proffered nonstatutory mitigating evidence because it was not on the statutory "list."
The state argues, as it has in the previous cases, that this Court's decision in Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), put to rest the notion that anything more than mere presentment of nonstatutory mitigating factors is required to satisfy Lockett. As we stated in Thompson and Downs, the United States Supreme Court's pronouncement in Hitchcock firmly rejected the concept that mere presentation is enough. It is not what the lawyer thought could be presented that is important. Rather, what is important is what the jury was permitted to consider in making its recommendation to the court. Here, as in the prior cases, it is abundantly clear that the jury was not permitted to consider proffered evidence of relevant, nonstatutory mitigating circumstances. At the sentencing proceeding, Waterhouse proffered evidence that he suffered from alcoholism and was under the influence of alcohol the night of the murder. He also presented evidence that despite the difficulties of being a severely abused child, he was a well behaved child until he suffered a severe head injury allegedly resulting in organic brain damage. The jurors should have been allowed to consider these factors in mitigation, but were told by both the judge and the prosecutor that it could not. For these reasons a reweighing of the aggravating and mitigating factors is required.[*]
Accordingly, we grant the writ of habeas corpus, vacate the sentence of death imposed upon Waterhouse, and remand this case to the trial court for a new sentencing proceeding before a jury, consistent with this opinion and the requirements of Lockett and Hitchcock. We affirm the trial court's denial of Waterhouse's rule 3.850 motion.
It is so ordered.
OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, C.J., concurs in part and dissents in part with an opinion.
McDONALD, C.J., concurring in part and dissenting in part.
I would deny all relief. Considering that Waterhouse has a prior second-degree murder conviction, was on parole when this offense was committed, that this crime was committed in the course of committing sexual battery and was especially cruel, atrocious, and heinous when compared with the limited value of the proffered and available nonstatutory mitigating evidence, causes me to unhesitatingly find that any Hitchcock *345 error was harmless error beyond a reasonable doubt and that the alleged deficiency in presenting additional nonstatutory mitigation fails to meet the second prong of the Strickland test.
NOTES
[*] Because the state declined to argue that the error complained of was harmless, we will not pass judgment on that issue.