937 So.2d 216 (2006)
Francisco Eddy SURI, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-2022.
District Court of Appeal of Florida, Third District.
September 1, 2006.
Rehearing Denied September 21, 2006.
*217 Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Michele Samaroo, Assistant Attorney General, for appellee.
Before GREEN, RAMIREZ, and ROTHENBERG, JJ.
RAMIREZ, J.
Francisco Eddy Suri appeals from his conviction for two counts of lewd and lascivious molestation on a child less than twelve years of age. Because we conclude that counsel did not properly preserve the issue for review of the failure to excuse a potential juror for cause, we affirm.
The State charged Suri with two counts of lewd and lascivious molestation on a child under twelve, alleging that he committed several lewd acts against his girlfriend's seven-year-old daughter. At the beginning of voir dire, the prospective jurors were informed of the State's charges against Suri. There was an initial exchange between the court and prospective Juror Alade:
THE COURT: I see that you have friends who have been or were victims of very very serious crimes. How recent was the most recent?
PROSPECTIVE JUROR ALADE: Two thousand.
THE COURT: Do you think that either of those experiences would affect your ability to be fair and impartial?
PROSPECTIVE JUROR ALADE: No.
THE COURT: Okay.
The prosecutor then asked the jurors if there was anything in their backgrounds that would prevent them from being a fair and impartial juror. In response, prospective Juror Alade stated: "I do believe I could be fair and impartial, but I see a lot of this in my practice. I'm a resident in the department of pediatrics at Jackson. So I just thought I should say that." Juror Alade then answered "yes" to the following question: "And with that experience though, you still could be fair and impartial?"
In her juror questionnaire, Juror Alade stated that her best friend in high school was impregnated while being raped, and that her medical school sorority sister was raped and murdered. When defense counsel attempted to question Juror Alade further about these incidents, she requested that she be allowed to speak outside the presence of the other prospective jurors. When the jurors were dismissed for lunch, two jurors remained, including Juror Alade. The following exchange then took place:
THE COURT: Ms. Alade, will you join us sidebar, please.
DEFENSE: Ms. Alade, I know you wanted to go sidebar regarding you had placed in your questionnaire your friend in high school was raped and a friend in medical school murdered. I want to ask you some more detail about that privately. Which one was it in 2000?
ALADE: Medical school. That's current. Just started jury selection last week. I didn't think it will be appropriate to discuss that in front of everybody since it's on trial.
DEFENSE: And the person who was murdered, how close was that person to you?

*218 ALADE: I had known her for two years. I joined the same sorority.
DEFENSE: Okay.
That case is going to trial this week?
ALADE: No. They started jury selection last week. It's been four years since the actual incident.
DEFENSE: Are you a witness?
ALADE: No. I haven't been called.
DEFENSE: Okay.
And are you having any feelings about that since it's in trial right now?
THE COURT: What does that mean?
DEFENSE: Are you having any feelings that will affect your ability to be fair in this case?
ALADE: No.
DEFENSE: No. Okay. All right.
And what about regarding your friend in high school?
THE COURT: Regarding what?
DEFENSE: Your friend in high school that was raped.
ALADE: What about it?
DEFENSE: How close was that person to you?
ALADE: Best friend.
DEFENSE: Okay.
And what happened? Was the person ever caught?
ALADE: She never pressed charges. That took me a year to convince her to tell her parents that's how she got pregnant.
DEFENSE: Okay.
And did criminal charges ever come about?
ALADE: No. He was in jail for something else. She just got him to drop his parental rights.
DEFENSE: Okay. And is there anything about that experience that she was your friend that would affect your ability to be fair in this case?
ALADE: I mean, I would hope not. I don't know if this case entails  I consider myself to be pretty level headed. I could separate one from the other. It was a long time ago. I don't know. If this was a seven year old who was raped and got pregnant, if that's going to bring something up in me. But I assume no. Do you understand?
DEFENSE: I think I do.
ALADE: Okay. I assume no. But if it's something that hits close to home, I can't tell you because I don't know the situation surrounding the case. I don't know. And my friend who was murdered in Gainesville, was also raped and murdered and left in her apartment for three days before we got in to find her.
THE COURT: Anything else? State?
PROSECUTOR: I'm assuming, for a moment, this little seven-year old was not pregnant. So knowing that, that's not going to cause you any problems?
ALADE: No. I honestly don't assume so, but no. As far as I can tell thinking logically, no.
PROSECUTOR: Good. Thank you.
THE COURT: Okay.
Juror Alade then expressed her concerns about scheduling, worried that the trial could take longer than her job duties as a resident at Jackson Memorial Hospital would allow, and the trial judge assured her that the trial could be completed within three days.[1]
Before recessing for lunch, another juror was questioned. When the trial reconvened, *219 jury selection began. When Juror Alade came up, the following took place:
DEFENSE COUNSEL: I'm moving for cause on Ms. Alade, Judge, because at sidebar when she was asked whether she could be fair, she hesitated.
THE COURT: Denied. I disagree with that representation. Anything you want to exercise a peremptory.
DEFENSE COUNSEL: No.
Later, the defense struck Juror Alade peremptorily. Then, after exhausting all of her peremptory challenges, defense counsel requested an additional peremptory challenge based on the denial of a cause challenge regarding another prospective juror, Juror De Diego. The trial court granted defense counsel's request. Defense counsel then requested one more additional peremptory challenge based on the denial of the cause challenge as to Juror Alade. Defense counsel identified the juror she would strike if the additional peremptory was granted. The trial court denied the request. The jury subsequently found Suri guilty as charged.
The defense contends on appeal that the trial court abused its discretion by denying its challenge for cause of Juror Alade where, based on her equivocal responses, there was a reasonable probability that Juror Alade could not be fair and impartial due to the fact that she is a pediatrician who deals with children who have been sexually abused, her best friend in high school was impregnated while being raped, and her sorority sister was raped and murdered. None of these arguments, however, were presented to the trial court.
When defense counsel stated that Juror Alade hesitated as to whether she could be fair, the trial court disagreed with that representation. The question of whether a prospective juror is competent to serve as a juror is a mixed question of law and fact and will not be disturbed on appeal unless the trial court's decision is manifestly erroneous. Mills v. State, 462 So.2d 1075, 1079 (Fla.1985).
As recognized in Dorsey v. State, 868 So.2d 1192 (Fla.2003), juror responses during voir dire include both verbal and nonverbal communications. The term "hesitate" clearly contains a nonverbal component when it refers to the speaker's slow delivery, or when the speaker pauses in uncertainty, or speaks haltingly. We must defer to the trial court's conclusion that Juror Alade did not hesitate in her nonverbal communication. See Fernandez v. State, 730 So.2d 277, 281 (Fla.1999).
Once defense counsel moved to strike for cause Juror Alade because she hesitated, and the trial court disagreed with counsel's representation, it became incumbent on counsel to expand on the objection so that the trial court could properly rule on the motion. Id.; Turner v. State, 645 So.2d 444, 446 (Fla.1994). This is a lynchpin of our preservation rule. If instead of nonverbal hesitation, defense counsel meant that there was verbal equivocation of the type recognized in Busby v. State, 894 So.2d 88 (Fla.2004), defense counsel should have voiced it. "The mere fact that a juror gives equivocal responses does not disqualify that juror for service. The question is whether the responses voiced by [the juror] were equivocal enough to generate a reasonable doubt about his fitness as a juror." Id. at 96. See also Guzman v. State, 934 So.2d 11 (Fla. 3d DCA 2006). Here the trial court never even had the opportunity to evaluate whether Juror Alade's responses were equivocal enough because that argument was never made. We therefore hold that the argument that Juror Alade's response were equivocal was not preserved when the motion to excuse her only mentioned that she hesitated.
Affirmed.
GREEN, J., concurs.
*220 ROTHENBERG, J. (concurring).
The majority opinion correctly recognizes that because defense counsel failed to preserve the defendant's objection to Ms. Alade, we must affirm. I, therefore, join the majority and write only to include an analysis regarding the standard which must be applied by the appellate courts when examining a trial court's rulings regarding challenges for cause, because even if the objection to Ms. Alade had been preserved, affirmance would be mandated.
There are two very distinct and different standards upon which a challenge for cause must be analyzed. The first is the standard which is used to guide the trial court when making a determination as to whether to grant a cause challenge, and the second is the standard upon which an appellate court must review the trial court's ruling. After applying the appellate standard clearly articulated by our state Supreme Court, I would affirm. See Guzman v. State, 934 So.2d 11 (Fla. 3d DCA 2006).

THE TRIAL COURT'S STANDARD REGARDING CHALLENGES FOR CAUSE
"The primary purpose of voir dire is to determine whether the juror is qualified and will be fair and impartial, free from all bias, prejudice or interest in the cause being tried." Williams v. State, 744 So.2d 1103, 1108 (Fla. 3d DCA 1999)(Cope, J., concurring in part and dissenting in part)(quoting Ritter v. Jimenez, 343 So.2d 659, 661 (Fla. 3d DCA 1977)) (citations omitted). Juror excusals for cause are generally within the trial court's discretion, Kokal v. Dugger, 718 So.2d 138 (Fla.1998), and thus, the trial court has the duty to evaluate each cause challenge. "The trial court standard for granting an excusal for cause is based upon reasonable doubt," Kessler v. State, 752 So.2d 545, 550 (Fla. 1999), and the Florida Supreme Court has repeatedly held, if there is a reasonable doubt about a juror's impartiality, the juror should be dismissed for cause. See Id.; Turner v. State, 645 So.2d 444, 447 (Fla.1994); Moore v. State, 525 So.2d 870, 872 (Fla.1988)("The juror should be excused if there is any reasonable doubt about the juror's ability to render an impartial verdict."); Hill v. State, 477 So.2d 553, 555 (Fla.1985); Montozzi v. State, 633 So.2d 563, 565 (Fla. 4th DCA 1994).

THE STANDARD TO BE APPLIED ON APPELLATE REVIEW
When reviewing whether the trial court has abused its discretion in determining whether there exists reasonable doubt as to a juror's ability to render a fair and impartial verdict, an appellate court must give great deference to the trial court's ruling. Ault v. State, 866 So.2d 674, 684 (Fla.2003)("[A] trial court has great discretion when deciding whether a challenge for cause based on juror incompetency is proper.")(emphasis added); Conde v. State, 860 So.2d 930, 939 (Fla.2003)("A trial court has great discretion when deciding whether to grant or deny a challenge for cause based on juror competency.")(emphasis added)(citing Barnhill v. State, 834 So.2d 836, 844 (Fla.2002)); Morrison v. State, 818 So.2d 432, 442 (Fla.2002)("`The trial judge has the duty to decide if a challenge for cause is proper, and this Court must give deference to the judge's determination of a prospective juror's qualifications.'")(emphasis added)(quoting Castro v. State, 644 So.2d 987, 989 (Fla.1994)). The "great deference" appellate standard, which is used to review a trial court's ruling regarding a cause challenge, is based upon our recognition that the trial court has a unique vantage point in determining juror bias. Unlike the trial court, which is able to see and hear the juror's *221 responses and to make observations, an appellate court can only review the cold record. As our Supreme Court articulated in Ault:
In reviewing a claim of error such as this, we have recognized that the trial court has a unique vantage point in the determination of juror bias. The trial court is able to see the jurors' voir dire responses and make observations which simply cannot be discerned from an appellate record.
Ault, 866 So.2d at 683-84 (quoting Smith v. State, 699 So.2d 629, 635-36 (Fla.1997)); see also Busby v. State, 894 So.2d 88, 95 (Fla.2004); Davis v. State, 859 So.2d 465, 473 (Fla.2003)("A trial court has latitude in ruling upon a challenge for cause because the court has a better vantage point from which to evaluate a prospective juror's answers than does this Court on a cold review of the record."); Morrison, 818 So.2d at 442 ("`A trial court has latitude in ruling upon a challenge for cause because the court has a better vantage point from which to evaluate prospective jurors' answers than does this Court in our review of the cold record.'")(quoting Mendoza v. State, 700 So.2d 670, 675 (Fla.1997)); Conde, 860 So.2d at 939 ("[T]rial courts have a unique vantage point in their observation of jurors' voir dire responses. Therefore, this Court gives deference to a trial court's determination of a prospective juror's qualifications and will not overturn that determination absent manifest error."). In fact, in Cook v. State, 542 So.2d 964 (Fla.1989), the Florida Supreme Court specifically noted that "[t]here is hardly any area of the law in which the trial judge is given more discretion than in ruling on challenges of jurors for cause," Id. at 969 (emphasis added), and that "`[t]here are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury.'" Id. at 969 (emphasis added)(quoting United States v. Ploof, 464 F.2d 116, 118-19 n. 4 (2d Cir.), cert. denied sub nom. Godin v. United States, 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972)).
Given the broad discretion which trial courts enjoy in evaluating the competency of a juror and the great deference an appellate court must afford the trial court when reviewing these determinations, a trial court's determination regarding a cause challenge is not to be overturned in the absence of manifest error. "It is within a trial court's province to determine whether a challenge for cause is proper, and the trial court's determination of juror competency will not be overturned absent manifest error." Fernandez v. State, 730 So.2d 277, 281 (Fla.1999); see also Busby, 894 So.2d at 95; Ault, 866 So.2d at 684; Conde, 860 So.2d at 939; Davis, 859 So.2d at 473; Morrison, 818 So.2d at 442; Kimbrough v. State, 700 So.2d 634, 639 (Fla. 1997); Smith, 699 So.2d at 636.
Manifest error exists where there is no support in the record for the trial court's decision or where no reasonable person would take the view adopted by the trial court. Conversely, if there is any record support for the trial court's decision, the reviewing court must uphold the trial court's decision to deny a cause challenge. See Busby, 894 So.2d at 95 (holding that the trial court's determination of juror competency will not be overturned on appeal absent manifest error and that "[t]he decision to deny a challenge for cause will be upheld on appeal if there is support in the record for the decision"); Davis, 859 So.2d at 473; Gore v. State, 706 So.2d 1328, 1332 (Fla.1997); Mendoza v. State, 700 So.2d at 675; Johnson v. State, 660 So.2d 648, 661 (Fla.1995). Likewise, in Waterhouse v. Moore, 838 So.2d 480, 482 (Fla.2002), the Florida Supreme Court upheld *222 the trial court's determination regarding a cause challenge based upon long-standing law that "a trial court's ruling on a challenge for cause must be sustained absent an abuse of discretion, and this discretion is only abused where no reasonable person would adopt the view taken by the trial court. . . ." See also Singleton v. State, 783 So.2d 970, 973 (Fla.2001); Kessler, 752 So.2d at 550; Huff v. State, 569 So.2d 1247, 1249 (Fla.1990).
A review of the portions of the record quoted in the majority opinion, reveals substantial support for the trial court's decision to deny the cause challenge as to Ms. Alade. In her juror questionnaire, Ms. Alade replied that two of her friends were victims of crimes, one, who was raped and impregnated in high school, and another, a sorority sister who was raped and murdered. At the beginning of voir dire, the trial court read the charges against the defendant and the jury learned that, if selected, they would decide whether Francisco Suri had committed two acts of lewd and lascivious assault upon a child less than twelve years of age. After learning of the charges against the defendant, when asked if either of her friends' experiences would affect her ability to be fair and impartial, Ms. Alade unequivocally responded "No." When asked by the State if she could be fair, she again replied that she believed she could be fair and impartial. When asked about her work experience in the Pediatrics Department at Jackson Memorial Hospital, she explained that, as a resident within the department, she attends to children who have been molested, but again reassured the lawyers and the trial court that she still could be fair and impartial. When she was questioned further about her friends' experiences sidebar, Ms. Alade was asked whether, as a result of the rape and murder of her medical school sorority sister, she had any "feeling" which would affect her ability to be fair in this case. Once again, without hesitation or equivocation, she responded that she did not. When questioned further about her friend in high school who was raped, she explained that her friend became pregnant by the man who raped her, but did not press charges when she learned that he was in custody on an unrelated case and he agreed to waive his parental rights to the child. When asked if there was anything about this friend's experiences that would affect her ability to be fair and impartial, she stated "I would hope not. . . . I consider myself to be pretty level headed. I could separate one from the other. It was a long time ago." Her only concern and cause for hesitation was if the victim in this case had been impregnated as a result of the molestation. But even then, and it appeared that she was thinking out loud, she replied that she assumed it would not. The prosecutor then asked Ms. Alade if she were to learn that the child was not pregnant, would she have any problem being fair and impartial:
PROSECUTOR: I'm assuming, for a moment, this little seven-year-old was not pregnant. So knowing that, that's not going to cause you any problems?
MS. ALADE: No, I honestly don't assume so, but no. As far as I can tell thinking logically, no.
Thus, the record clearly demonstrates Ms. Alade's unequivocal responses, and her assurances to the trial court and counsel that she could separate her friends' experiences from her role as a juror, and that she could be a fair and impartial juror. Her sole concern appeared to be if she learned that the child had become pregnant as a result of the molestation, a factor not present in this case. As there is record support for the trial court's conclusions, manifest error did not occur, and we must affirm.
*223 A trial court's analysis of a juror's responses, naturally includes an assessment of the juror's credibility and it is not the role of the appellate court to second guess the conclusions made by the trial court. "The trial judge's predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record, and it is the trial judge's duty to decide if a challenge for cause is proper." Taylor v. State, 638 So.2d 30, 32 (Fla.1994)(citing Wainwright v. Witt, 469 U.S. 412, 429, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)); see also Castro, 644 So.2d at 990 (finding that whether a juror should be excused for cause lies within the sound discretion of the trial court because the trial court has the opportunity to observe and evaluate the prospective juror's demeanor and credibility).
The trial court accepted Ms. Alade's representations that she would be a fair and impartial juror, and both the defense and the State repeatedly stated during oral argument that the record demonstrated that Ms. Alade was being candid and forthright with the trial court and the attorneys, and that she was a very honest and conscientious juror. Because Ms. Alade repeatedly assured the trial court and the attorneys that she would be fair and impartial, and her credibility has not and is not being challenged, it is clear that the trial court did not abuse its discretion in denying defense counsel's challenge for cause, and because there is record to support for the trial court's findings, we must affirm as manifest error cannot be found. See Waterhouse, 838 So.2d at 482 ("[A] trial court's ruling on a challenge for cause must be sustained absent an abuse of discretion, and this discretion is only abused where no reasonable person would adopt the view taken by the trial court. . . .").
Based on the standard of appellate review requires that we (1) recognize that it is within the trial court's province to determine whether a challenge for cause is proper; (2) recognize that the trial judge who is present during voir dire is in a far superior position to properly evaluate the responses to questions propounded to the jurors; (3) recognize the discretion and latitude trial courts must be afforded in making this determination; and (4) recognize that convictions are not to be reversed based upon a ruling on a cause challenge absent manifest error, i.e., that there is no record support for the trial court's ruling and/or that no reasonable person could have concluded as did the trial court, I would affirm even if the defendant had properly preserved his objection to Ms. Alade.
NOTES
[1] For the sake of completeness, we have attempted to include all of Juror Alade's comments.